UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SAMUEL G.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    CIVIL NO. 3:21cv520 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability, Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2

2. The claimant has not engaged in substantial gainful activity since April 24, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: diabetes with diabetic neuropathy, sarcoidosis (with intermittent flares), obesity, and tachycardia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; and he should avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, extreme heat, extreme cold, and humidity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 22, 1977 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 24, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on February 3, 2022. On March 14, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 28, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

On July 29, 2016, Plaintiff filed applications for DIB and SSI disability benefits, alleging

a disability onset date of April 24, 2014. (Tr. 358, 365). The claims were initially denied on November 7, 2016 (Tr. 123, 124), and on reconsideration on February 14, 2017. (Tr. 140, 141). A hearing was conducted on March 20, 2018 (Tr. 92) before ALJ Robert J. Tjapkes, resulting in an unfavorable decision dated July 3, 2018. (Tr. 164). This decision was vacated and remanded by the Appeals Counsel on December 12, 2019, pursuant to an Appointments Clause defect. (Tr. 190). A new hearing was conducted on June 23, 2020, before ALJ Stephanie Katich, which resulted in an unfavorable decision dated January 12, 2021. (Tr. 12). The Appeals Counsel denied review on May 17, 2021 (Tr. 1), leading to the present appeal.

  Plaintiff was seen frequently at the ER of IU Goshen Hospital for acute chest pain (Tr. 635, 670, 661, 655), recurrent ankle pain (Tr. 632-634, 668, 650, 648,) and abdominal pain. (Tr. 618, 612). An MRI of his ankle revealed bone marrow edema and early degenerative changes. (Tr. 693). Pulmonary function testing revealed a mild restrictive pattern, with documented spirometric values 66% of predicted normal. (Tr. 689-690).

  Later, Plaintiff's ER visits were precipitated by his difficulty controlling his diabetes. He was admitted overnight July 30-31, 2015, when his blood glucose was over 300. (Tr. 676). On July 2, 2016 he went to the ER again for chest pain and was found to have a glucose reading over 800. (Tr. 696-698). Two weeks later Plaintiff was seen again in the ER with elevated blood sugar, this time requiring IV hydration to reduce his glucose levels into the 200s. (Tr. 718). Upon follow-up with Dr. Moshier on September 2, 2016, Plaintiff reported recent glucose levels of 200-700. (Tr. 736).

  On January 3, 2017, Plaintiff again presented to the ER with concerns of elevated glucose, which had been ongoing for two months. (Tr. 794). His glucose was 758, which was lowered to

the 260 range for discharge. (Tr. 795). He was seen in the ER with elevated glucose in February (Tr. 895, 898), March (Tr. 880), and July. (Tr. 1289). A1c testing in 2017 revealed values of 12.0 in February (Tr. 914), 11.5 in April (Tr. 913) and 8.3-8.8 in November. (Tr. 907-09). In May 2018, Plaintiff was seen in the ER with glucose of 554. (Tr. 1235).

In March 2018, Plaintiff fell twice, breaking his glasses. (Tr. 1439). Plaintiff fell getting out of bed in July 2018, injuring his arm and requiring a splint for a nondisplaced fracture. (Tr. 1192-1193). In August 2019 he presented to the ER with pain and swelling in his jaw after falling and hitting a table. (Tr. 1055).

On physical examination on October 29, 2018, primary care physician Jason Moshier, M.D. noted "some open wounds on the bottom of both feet." (Tr. 1404).) Plaintiff was referred to diabetic wound care for foot ulcers on August 29, 2019, noting also that his blood sugar had been consistently in the 90-250 range. (Tr. 1363, 1368). Plaintiff started experiencing shortness of breath and weakness in his legs with any sort of exertion, reporting in October 2019 that he stopped shaving because he couldn't stand long enough. (Tr. 1355). Plaintiff was again seen in the ER for a fall in June 2020, this time having tripped over a rug and suffered lacerations to his lips and gums. (Tr. 1543).

Dr. Moshier offered an opinion regarding Plaintiff's abilities and restrictions on three different occasions. The first opinion is dated February 5, 2018. (Tr. 969-972). In this first opinion statement, Dr. Moshier stated that he had seen Plaintiff every 1-3 months for three years, for conditions including type II diabetes, depression, chronic pain, insomnia, and opioid abuse. (Tr. 969). Dr. Moshier opined that the Plaintiff's conditions reached the level reflected in the opinion beginning January 1, 2017. (*Id.*) Dr. Moshier opined that Plaintiff could frequently lift

6

less than 10 pounds and occasionally up to 20 pounds, and frequently carry ten pounds and occasionally 20 pounds, due to chronic pain in his chest, joints, and neck from degenerative joint disease. (Tr. 970). Dr. Moshier opined that Plaintiff could sit up to 4 hours per day, stand 3 hours, and walk 1 hour, but would need to alternate positions at will because standing or walking for prolonged periods aggravates his pain. (*Id.*) Plaintiff can occasionally reach overhead and in all directions, as well as push and pull; and can frequently handle, finger, and feel. (Tr. 971). Bilateral use of foot controls is limited to occasionally. (*Id.*) Due to difficulties with balance and joint pain, Plaintiff should rarely (defined as 1%-5% of the day) climb ladders and scaffolds or crawl; and could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and rotate his head and neck. (*Id.*) Plaintiff should never be exposed to unprotected heights, and occasionally be exposed to moving mechanical parts, operation of a vehicle, humidity/wetness, dust/odors/fumes/ gases/pulmonary irritants, extreme heat, extreme cold, and/or vibration. (Tr. 972). Dr. Moshier opined that due to his combined symptoms, Plaintiff would be off task more than 25% of the work day, and could be expected to be absent from work more than 4 times per month. (Tr. 970).

Upon inquiry from the state determination agency, Dr. Moshier provided an updated opinion on February 19, 2020. (Tr. 1486-1489). Dr. Moshier continued his opinion that Plaintiff would be off task more than 25% of the work day, but specified that attention and concentration could be maintained in intervals of 30 minutes or less. (Tr. 1486). Once again, Plaintiff could be expected to be absent from work 4+ days per month. (*Id.*) In this opinion, Dr. Moshier opined Plaintiff could occasionally lift up to 20 pounds and rarely (defined as 1-5% of the work day) lift 50 pounds; he could occasionally carry ten pounds and rarely carry 20 pounds. (Tr. 1487). In this opinion, Dr. Moshier stated that Plaintiff could sit up to 7 hours and stand or walk 1 hour, but

7

would need to alternate positions at will. (*Id.*) He emphasized Plaintiff's ability to stand is limited due to pain in his feet and that he experiences occasional falls due to his symptoms, and that the pain in his feet would require occasional use of a walker to walk more than 1-2 city blocks depending on the pain in his feet. (Tr. 1487-1488). Any repetitive use of the upper and lower extremities was limited to occasionally. (Tr. 1488). Plaintiff could occasionally rotate his head and neck; never climb ladders and scaffolds; and can rarely climb stairs and ramps, balance, stoop, kneel, crouch, and/or crawl. (Tr. 1489). He should never be exposed to unprotected heights; rarely exposed to dust/odors/fumes/pulmonary irritants; and occasionally exposed to moving mechanical parts, operation of a vehicle, humidity/wetness, extreme cold, extreme heat, and/or vibrations. (Tr. 1489). Dr. Moshier's latest opinion is dated May 18, 2020, and essentially restates the same limitations as the February 2020 opinion. (Tr. 1527-1530).

A consultative examination was performed by R. Gupta, M.D., on October 15, 2016. (Tr. 768-772). Dr. Gupta's opinion lacked any specifics, stating only that Plaintiff "is able to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects" but offered no specifics regarding how much, how often, how much weight, et cetera. (Tr. 770).

A vision examination was performed on November 14, 2016, which noted that Plaintiff's vision was correctable but he needed new glasses with an updated prescription. (Tr. 779-781).

A psychological consultative examination was performed on October 21, 2016, by Stefanie G. Wade, Psy.D, H.S.P.P. (Tr. 774-777). Dr. Wade diagnosed major depressive disorder, recurrent, moderate, and opined that Plaintiff has poor concentration, which per his report was due to distraction due to sugar imbalances. (Tr. 776). She noted that his daily routines are not well established, and that he needs support from others to accomplish appropriate daily tasks. (*Id.*) She

noted that his daily activities appear to be simple, but that his ability to sustain those efforts on a daily basis appears to be somewhat impaired. (Tr. 776).

At the initial level, state agency consultants J. Sands, M.D., and S. Hill, Ph.D., determined Plaintiff to have no severe medically determinable impairments. (Tr. 136-137). At the reconsideration level, B. Randal Hanson, Psy.D., also opined that Plaintiff had no medically determinable severe impairment (Tr. 147), but Joshua Eskonen, D.O., determined that Plaintiff's diabetic neuropathy was a severe impairment. (Tr. 146). Dr. Eskonen's opinion was that Plaintiff was capable of occasionally lifting or carrying up to 50 pounds, occasionally up to 20 pounds; he could sit, stand, or walk about 6 hours each per 8 hour work day; could occasionally climb ladders, ropes, or scaffolds; and could frequently climb ramps or stairs, balance, stoop, kneel, crouch, and/or crawl. (Tr. 148-149).

Prior to the hearing, Plaintiff submitted a written report from consulting vocational expert Kerri Moran, an independent Certified Vocational Counselor certified by the Massachusetts Rehabilitation Commission. (Tr. 598-608). Ms. Moran offered an opinion explaining the significance of any restrictions involving avoidance of concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas, and the extensive difficulty to find appropriate job placement for an individual so limited. (Tr. 598-601). Ms. Moran also offered an opinion pointing to the difficulty to find any competitive employment in the current economy for an individual capable of only occasional interaction with coworkers, such that any such limitation is essentially work preclusive in the current economy. (Tr. 601-605).

At the more recent hearing in June 2020, Plaintiff testified he had been falling more since the first hearing, which he estimated to be 30 times since that January. (Tr. 51). He also stated he

no longer drives because no one has figured out what is causing these difficulties with his feet and legs. (Tr. 52). He testified to chronic left-sided chest pain, which gets worse with walking or going up stairs. (Tr. 53-54). He testified to avoiding lifting almost entirely since 2014 because it also triggers chest pain. (Tr. 54-55). He described not leaving the house six days per week (Tr. 57-58), and sleeping three hours at a time on average. (Tr. 58).

During the first hearing, on March 20, 2018, Plaintiff testified he could stand for probably half an hour, walk three quarters of a mile, and lift about 50 pounds occasionally, 10 pounds more frequently. (Tr. 107-108). He described getting intermittent swelling in his ankles, at a frequency of about every six weeks, which would require him to spend significant amounts of time lying down with his feet elevated. (Tr. 112).

In support of remand, Plaintiff first argues that the ALJ's evaluation of Dr. Moshier's opinions is not supported by substantial evidence. The ALJ stated that little weight was given to Dr. Moshier's opinions because "they are inconsistent with the medical evidence and Dr. Moshier's own opinions which are essentially normal." (Tr. 26). The ALJ further stated, without citation to the record, that "[t]here is no evidence supporting the limitations regarding off task [sic], absenteeism, sit/stand option, reaching, pushing/pulling, crawling, or rotating his head and neck." (*Id*.) Plaintiff points out, however, that a review of Dr. Moshier's records, as well as those of IU Health Goshen Hospital, which worked closely with his office, reveals the ALJ's statements are clearly in error. Plaintiff also contends that the ALJ's analysis is erroneous because it fails to consider the consistency between Dr. Moshier's opinion regarding the Plaintiff's inability to remain on task or be consistently productive and the opinion of consulting examiner Dr. Wade, who also opined that Plaintiff has poor concentration and would likely need assistance from

others to maintain even simple tasks. (Tr. 776). The ALJ also failed to address that Plaintiff established care with Dr. Moshier April 14, 2015, years prior to the opinion offered. (*See* Tr. 749).

Plaintiff contends that the ALJ's characterization of Dr. Moshier's examinations and records as being "essentially normal" is not supported by the medical evidence of record, and that the ALJ failed to address the length of the treatment relationship between Plaintiff and Dr. Moshier, as well as the consistencies between Dr. Moshier's opinions and that of consulting psychologist Dr. Wade, and the consistencies between Dr. Moshier's notations and those of the IU Goshen Hospital ER physicians. *See* SSR 16-3p.

In response, the Commissioner argues that Plaintiff is asking this court to reweigh the evidence. However, it is clear that the ALJ mischaracterized Dr. Moshier's opinions, as the extensive record does not support the ALJ's conclusion that the medical evidence and Dr. Moshier's physical exams of Plaintiff were "essentially normal". An ALJ's decision is compromised when she mischaracterizes evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). Additionally, the ALJ cherry-picked the record to support her conclusions, which is not permitted. Thus, remand is required for a proper evaluation of Dr. Moshier's opinions.

Next, Plaintiff argues that the ALJ failed to consider the opinions of consulting vocational expert Kerri Moran. Plaintiff points out that no analysis of, or a citation to, Ms. Moran's opinion appears anywhere in the decision. Clearly, the ALJ failed to consider Ms. Moran's opinion, which departed significantly from that of either testifying vocational expert. While Ms. Moran's opinion is not assigned any particular weight by any of Social Security's regulations it was required to be considered and analyzed by the ALJ, with reasoning set forth in the decision.

11

The Commissioner argues that the ALJ implicitly rejected Ms. Moran's report by rejecting Plaintiff's objections to the vocational expert's testimony. However, the inference the Commissioner draws from the ALJ's decision is subjective, and this argument appears to be a post-hoc rationalization. The Commissioner cannot defend the ALJ's decision on grounds that the ALJ did not herself embrace. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Ultimately the ALJ must "minimally articulate [her] reasons for crediting or rejecting evidence of disability" and build an "accurate and logical bridge" between the evidence and [her] conclusion about the weight [she] gives to an opinion. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (internal quotations omitted). Therefore, the ALJ's failure to provide a proper analysis to Ms. Moran's report necessitates remand.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: April 4, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court